IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| UNITED STATES OF AMERICA,　　　　） | |
| 　　　　　　　　　　　　　　　） | |
| 　　　　　　　　Plaintiff,　　） | |
| 　　　　　　　　　　　　　　　） | |
| 　　　v.　　　　　　　　） | Civil No. _____ |
| 　　　　　　　　　　　　　　　） | |
| GUARDIAN INDUSTRIES CORP.,　　） | |
| 　　　　　　　　　　　　　　　） | |
| 　　　　　　　　Defendant.　） | |

## COMPLAINT

The United States of America, by the authority of the Attorney General of the United States and through the undersigned attorneys, acting at the request of the Administrator of the United States Environmental Protection Agency ("U.S. EPA") alleges:

## NATURE OF THE ACTION

1.　　　This is a civil action brought against Guardian Industries Corp. ("Guardian" or "Defendant"), pursuant to Sections 113(b) of the Clean Air Act ("CAA"), 42 U.S.C. § 7413(b), seeking injunctive relief and civil penalties for Clean Air Act violations that occurred at Guardian's eight U.S. float glass manufacturing plants. The Complaint alleges that Guardian violated Part C of Title I of the CAA, 42 U.S.C. §§ 7470-7492, (the "Prevention of Significant Deterioration" provisions of the CAA's "New Source Review" requirements), and the federally enforceable State Implementation Plans ("SIPs") for California, Iowa, Michigan, New York, Pennsylvania, South Carolina, and Texas approved by EPA pursuant to Section 110 of the CAA, 42 U.S.C. § 7410. These SIPs incorporate and/or implement the above-listed federal CAA requirements.

2.      The eight float glass furnaces at issue in this action (hereinafter collectively referred to as Guardian's "Furnaces") are owned and operated by Guardian and are located in Guardian's float glass manufacturing plants in or near the following cities: Kingsburg, California; DeWitt, Iowa; Carleton, Michigan (lines 1 and 2); Geneva, New York; Floreffe, Pennsylvania; Richburg, South Carolina; and Corsicana, Texas. The Furnaces emit air pollutants regulated under the CAA, including nitrogen oxides ("NO$_X$"), sulfur dioxide ("SO$_2$"), sulfuric acid mist (H$_2$SO$_4$) and particulate matter ("PM"). Guardian constructed and/or modified one or more of these Furnaces without first obtaining appropriate permits authorizing their construction and/or modification as well as without obtaining appropriate permits authorizing the subsequent operation of the Furnaces. Guardian also failed to install and employ the best available control technology ("BACT") to control emissions of NO$_X$, SO$_2$, H$_2$SO$_4$ and PM as the CAA, the applicable federal regulations, and the SIPs require.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over the subject matter of this action and the parties pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), and 28 U.S.C. §§ 1331, 1345, and 1355.

4.      Venue is proper in this District pursuant to Sections 113(b) of the CAA, 42 U.S.C. § 7413(b), and 28 U.S.C. §§ 1391(b), and 1395(a), because Guardian is headquartered in this District and two of Guardian's Furnaces are located in this District.

## NOTICES

5.      Pursuant to Sections 113(a)(1) and 113(b) of the CAA, 42 U.S.C. §§ 7413(a) and 7413(b), U.S. EPA provided notice of the violations and of this action to Guardian and to each of the state and local air authorities where the Furnaces are located. The 30-day period established

2

in Section 113, 42 U.S.C. § 7413, between the notice provided by the United States and the

commencement of this civil action has elapsed.

## THE DEFENDANT

6.      Guardian is a Delaware corporation headquartered in Auburn Hills, Michigan.

Guardian is a "person" within the meaning of Section 302(e) of the CAA, 42 U.S.C. § 7602(e).

## STATUTORY AND REGULATORY BACKGROUND

7.      The Clean Air Act is designed to protect and enhance the quality of the nation's

air so as to promote the public health and welfare and the productive capacity of its population.

Section 101(b)(1) of the CAA, 42 U.S.C. § 7401(b)(1).

**A.      The National Ambient Air Quality Standards**

8.      Section 108(a) of the CAA, 42 U.S.C. § 7408(a), requires that the U.S. EPA

promulgate a list of each air pollutant, the emissions of which may reasonably be anticipated to

endanger public health or welfare and the presence of which results from numerous or diverse

mobile or stationary sources.  Pursuant to Section 108(a), U.S. EPA has identified, *inter alia*,

$NO_X$, $SO_2$, and PM, as such pollutants. 40 C.F.R. §§ 50.4, 50.5, 50.6, 50.7, 50.11, 50.13, 50.17,

and 50.18.

9.      Section 109 of the CAA, 42 U.S.C. § 7409, requires the U.S. EPA to promulgate

regulations establishing primary and secondary national ambient air quality standards

("NAAQS") for those air pollutants listed pursuant to Section 108 of the CAA, 42 U.S.C.

§ 7408. The primary NAAQS must be adequate to protect the public health with an adequate

margin of safety.  The secondary NAAQS must be adequate to protect the public welfare from

any known or anticipated adverse effects associated with the presence of the air pollutant in the

ambient air.  Pursuant to Section 109 of the CAA, U.S. EPA has promulgated primary and

secondary NAAQS for NO$_X$, SO$_2$, and PM, among others.  40 C.F.R. §§ 50.4, 50.5, 50.6, 50.7, 50.11, 50.13, 50.17, and 50.18.

10.     Under Section 107(d) of the CAA, 42 U.S.C. § 7407(d), each state is required to designate those areas within its boundaries where the air quality is better or worse than the NAAQS for each criteria pollutant, or where the air quality cannot be classified due to insufficient data. An area that meets the NAAQS for a particular pollutant is an "attainment" area. An area that does not meet the NAAQS is a "nonattainment" area. An area that cannot be classified due to insufficient data is "unclassifiable."

**B.     State Implementation Plans**

11.     To achieve the objectives of the NAAQS and the CAA, Section 110 of the CAA, 42 U.S.C. § 7410, requires each state to adopt and submit to U.S. EPA for approval a plan that provides for the attainment and maintenance of the NAAQS in each air quality control region within each state. This plan is known as a State Implementation Plan ("SIP").

12.     Pursuant to Section 110 of the CAA, 42 U.S.C. § 7410, U.S. EPA has approved various rules for the attainment and maintenance of the NAAQS in the States of Iowa, Michigan, New York, Pennsylvania, South Carolina, and Texas, and the San Joaquin Valley Unified Air Pollution Control District ("San Joaquin Air District").  These state provisions constitute the state's "applicable implementation plan," within the meaning of Section 113(b) and 302(q) of the CAA, 42 U.S.C. §§ 7413(b) and 7602(q), and are considered SIPs.

**C.     The Prevention of Significant Deterioration Program's General Requirements**

13.     Part C of Title I of the CAA, 42 U.S.C. §§ 7470-7492, sets forth requirements for the prevention of significant deterioration of air quality in those areas designated as either in attainment or unclassifiable for purposes of meeting the NAAQS.  These requirements are

4

designed to protect public health and welfare, to assure that economic growth will occur in a manner consistent with the preservation of existing clean air resources, and to assure that any decision to permit increased air pollution is made only after careful evaluation of all the consequences of such a decision and after public participation in the decision making process. These provisions are referred to herein as the CAA's "PSD program."

14.   The core of the PSD program is that "[n]o major emitting facility . . . may be constructed [or modified] in any area" unless various requirements are met. 42 U.S.C. § 7475(a). These requirements include obtaining a permit with emission limits, demonstrating that emissions will not contribute to a NAAQS violation, and applying best available control technology ("BACT") to control emissions. Id.

15.   Section 169(1) of the CAA, 42 U.S.C. § 7479(1), defines "major emitting facility" generally as a source with the potential to emit 250 tons per year ("tpy") or more of any air pollutant.

16.   The PSD regulations define "major stationary source" as any stationary source, which emits or has the potential to emit 250 tpy or more of any regulated air pollutant. 40 C.F.R. § 52.21(b)(1)(i)(b).

17.   Section 161 of the CAA, 42 U.S.C. § 7471, requires SIPs to contain emission limitations and such other measures as may be necessary, as determined under the regulations promulgated pursuant to these provisions, to prevent significant deterioration of air quality in attainment areas.

18.   A state or regional air authority may comply with Section 161 of the CAA, 42 U.S.C. § 7471, by being delegated by EPA the authority to enforce the federal PSD regulations set forth at 40 C.F.R. § 52.21, or by having its own PSD regulations approved by EPA as part of

its SIP, which must be at least as stringent as the requirements set forth at 40 C.F.R. § 51.166.
All of the states and regional air authorities with jurisdiction over the glass manufacturing
facilities at issue in this matter have either delegated or approved PSD programs.

**D.    Specific Requirements of the PSD Regulations**

19.    Under the PSD regulations and state SIPs that are applicable to the allegations in
this Complaint, "[n]o stationary source or modification to which the requirements of paragraphs
(j) through (r) of this section apply shall begin actual construction without a permit which states
that the stationary source or modification would meet those requirements." 40 C.F.R.
§ 52.21(a)(1). The requirements of paragraphs (j) through (r) "apply to any major stationary
source and any major modification with respect to each pollutant subject to regulation under the
Act that it would emit." 40 C.F.R. § 52.21(a)(2).

20.    "Major modification" is defined as "any physical change in or change in the
method of operation of a major stationary source that would result in a significant net emissions
increase of any pollutant subject to regulation under the Act." 40 C.F.R. § 52.21(b)(2)(i).

21.    "Significant" means an increase in emissions of at least the following amounts of
any of the following pollutants: 40 tpy or more of $NO_x$; 40 tpy or more of $SO_2$; 7 tpy or more of
$H_2SO_4$; and 15 tpy or more of PM. 40 C.F.R. § 52.21(b)(23)(i).

22.    "Net emissions increase" is defined as "[a]ny increase in actual emissions from a
particular physical change or change in method of operation" and any other emissions increase or
decrease at the source that is contemporaneous and creditable. 40 C.F.R. § 52.21(b)(3)(i).

23.    If a new major stationary source or major modification triggers the requirements
of the PSD program, the source or modification is subject to emission limitations meeting
BACT, as that term is defined by 40 C.F.R. § 52.21(b)(12) and 42 U.S.C. § 7479(3), for each

pollutant subject to regulation under the CAA that it would have the potential to emit in significant amounts. 40 C.F.R. § 52.21(j).

24.     If a new major stationary source or major modification triggers the requirements of the PSD program, the owner or operator must demonstrate that the construction or modification, taken together with other increases or decreases of air emissions, will not violate NAAQS or other applicable air quality standards. 40 C.F.R. § 52.21(k).

25.     Any owner or operator of a new major stationary source or modification subject to 40 C.F.R. § 52.21 who constructs or operates a source not in accordance with a PSD permit application or commences construction without applying for and receiving approval thereunder is subject to an enforcement action. 42 U.S.C. § 7413(b); 40 C.F.R. § 52.21(r)(1).

**E.     Title V Operating Permits**

26.     Title V of the CAA, 42 U.S.C. §§ 7661-7661f, establishes an operating permit program for certain sources, including "major sources." The purpose of Title V is to ensure that all "applicable requirements" that a source is subject to under the CAA, including PSD and Nonattainment NSR requirements are collected in one permit.

27.     "Major source" is defined as, among other things, any source which directly emits or has the potential to emit 100 tons or more per year of any regulated air pollutant. 42 U.S.C. § 7661(2); 40 C.F.R. § 70.2. $NO_X$, $SO_2$, $H_2SO_4$ and PM are regulated air pollutants. 40 C.F.R. § 70.2.

28.     Pursuant to Section 502(b) of the CAA, 42 U.S.C. § 7661a(b), U.S. EPA promulgated regulations implementing the requirements of Title V and establishing the minimum elements of a Title V permit program to be administered by any state or local air pollution control agency. 57 Fed. Reg. 32250 (July 21, 1992). These regulations are codified at

40 C.F.R. Part 70.

29.     The States of Iowa, Michigan, New York, Pennsylvania, South Carolina, Texas,

and the San Joaquin Air District each have a U.S. EPA-approved Title V program. See 40 C.F.R.

Part 70, Appendix A. They are authorized to issue and enforce Title V permits. In all respects

relevant to this Complaint, the Title V regulations of Iowa, Michigan, New York, Pennsylvania,

South Carolina, Texas, and the San Joaquin Air District that are applicable to this action closely

mirror the federal Title V regulations codified at 40 C.F.R. Part 70.

30.     Section 502(a) of the CAA, 42 U.S.C. § 7661a(a), the implementing regulations at

40 C.F.R. § 70.1(b), and the Iowa, Michigan, New York, Pennsylvania, South Carolina, Texas,

and the San Joaquin Air District's Title V permit programs and regulations, make it unlawful for

any person to violate any requirement of a permit issued under Title V or to operate a major

source except in compliance with a permit issued by a permitting authority under Title V.

31.     Section 504(a) of the CAA, 42 U.S.C. § 7661c(a), the implementing regulations at

40 C.F.R. § 70.6(a), and the Iowa, Michigan, New York, Pennsylvania, South Carolina, Texas,

and the San Joaquin Air District's Title V permit programs and regulations, require that each

Title V permit include, among other things, enforceable emission limitations and such other

conditions as are necessary to assure compliance with "applicable requirements" of the CAA and

the requirements of the relevant SIP. "Applicable requirements" is defined to include any

relevant PSD and Nonattainment NSR requirements. 40 C.F.R. § 70.2.

32.     Section 503(d) of the CAA, 42 U.S.C. § 7661b(d), the implementing regulations

at 40 C.F.R. § 70.5(a), and the Iowa, Michigan, New York, Pennsylvania, South Carolina, Texas,

and the San Joaquin Air District's Title V permit programs and regulations require any owner or

operator of a source subject to Title V permitting requirements to submit a timely and complete

permit application. Among other things, the permit application must contain: (i) information sufficient to determine all applicable air pollution control requirements (including any requirement to meet the applicable control technology requirements under the PSD and Nonattainment NSR programs), 40 C.F.R. § 70.5(c)(4); (ii) information that may be necessary to determine the applicability of other applicable requirements of the CAA, 40 C.F.R. § 70.5(c)(5); (iii) a compliance plan for all applicable requirements for which the source is not in compliance, 40 C.F.R. § 70.5(c)(8); and (iv) a certification of compliance with all applicable requirements by a responsible official. 40 C.F.R. § 70.5(d)(9).

33.     Under 40 C.F.R. § 70.5(b) and the Iowa, Michigan, New York, Pennsylvania, South Carolina, Texas, and the San Joaquin Air District operating permit programs and regulations, any applicant who fails to submit any relevant facts or who has submitted incorrect information in a permit application must, upon becoming aware of such failure or incorrect submittal, promptly submit such supplementary facts or corrected information.

**F.     CAA Enforcement Provisions**

34.     Sections 113(a)(1) and (3) of the CAA, 42 U.S.C. §§ 7413(a)(1) and (3), provide that the Administrator of U.S. EPA may bring a civil action in accordance with Section 113(b) of the CAA whenever, on the basis of any information available to the Administrator, the Administrator finds that any person has violated or is in violation of any requirement or prohibition of, *inter alia*: (1) the Prevention of Significant Deterioration requirements of Section 165(a) of the CAA, 42 U.S.C. § 7475(a); (2) Title V of the CAA, 42 U.S.C. §§ 7661-7661f, or any rule or permit issued thereunder; or (3) a SIP or any permit issued thereunder.

35.     Section 113(b) of the CAA, 42 U.S.C. § 7413(b), authorizes the Administrator of

U.S. EPA to initiate a judicial enforcement action for a permanent or temporary injunction and/or to assess civil penalties of up to $25,000 per day for each violation occurring on or before January 30, 1997; up to $27,500 per day for each violation occurring after January 31, 1997 through March 15, 2004; up to $32,500 per day for each violation occurring on or after March 16, 2004 through January 12, 2009; and up to $37,500 per day for each violation occurring after January 13, 2009. *See* Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701; 40 C.F.R. § 19.4.

## GENERAL ALLEGATIONS

36.     At all times relevant to this Complaint, Guardian owned and operated the Furnaces identified in Paragraph 2.

37.     At its Furnaces, Guardian produces "float" or "flat" glass which is used in vehicles, buildings, and other applications.

38.     At all times relevant to this Complaint, Guardian's Furnaces have been "major stationary sources" of $SO_2$, NOx, and/or PM within the meaning of the CAA, the PSD regulations, and the applicable state SIPs. At all times relevant to this civil action, each of Guardian's Furnaces was a "stationary source" of $SO_2$, NOx, and/or PM within the meaning of the CAA. At all times relevant to this civil action, each of Guardian's Furnaces was a "major source" of $SO_2$, NOx, and/or PM within the meaning of Title V of the CAA and the applicable states' and local air pollution control agency's Title V permit programs.

39.     U.S. EPA has conducted investigations of Guardian's Furnaces, which included performing site inspections, reviewing permitting history and emissions data for the Furnaces, and analyzing other relevant information obtained from Guardian concerning construction and

10

operation of such Furnaces. The United States alleges the following based on the results of U.S. EPA's investigation, upon information and belief.

### FIRST CLAIM FOR RELIEF

(PSD Violations)

40.  Paragraphs 1 through 39 are re-alleged and incorporated herein by reference.

41.  At various times, Guardian commenced construction or constructed major modifications, as defined in the Clean Air Act, of one or more of its Furnaces. These major modifications included, but are not limited to re-bricking of a furnace or installing cooling block fans at one or more Furnaces listed in Paragraph 2. By way of example, in 1993, Guardian performed a total rebuild of the furnace at the Corsicana, Texas facility. This furnace rebuild included, among other things, re-bricking the furnace and tin bath refractories, replacing worn or damaged batch house components, and replacing heating elements. These modifications enabled a production increase at the Corsicana, Texas facility, and consequently, resulted in significant net emissions increases, as defined by 40 C.F.R. § 52.21(b)(3)(i), of one or more of the following pollutants: $NO_X$, $SO_2$, $H_2SO_4$, and/or PM.

42.  From the time it commenced construction or performed major modification(s) to its Furnaces, Guardian has been in violation of Section 165(a) of the CAA, 42 U.S.C. § 7475(a), the PSD regulations set forth in 40 C.F.R. § 52.21, and the corresponding SIPs, by, *inter alia*,: (a) undertaking such major modification(s) and operating its Furnaces without first obtaining a PSD permit as required by 40 C.F.R. § 52.21(a)(2)(iii), and (b) by failing to meet BACT emission limitations as required by 40 C.F.R. § 52.21(j).

43.  Unless restrained by an order of this Court, the violations of the CAA alleged in this First Claim for Relief will continue.

44.      As provided in Section 113(b) of the CAA, 42 U.S.C. § 7413(b), the violations set forth above subject Guardian to injunctive relief and civil penalties. *See also* 40 C.F.R. § 19.4.

## SECOND CLAIM FOR RELIEF

(Title V)

45.      Paragraphs 1-44 are re-alleged and incorporated herein by reference.

46.      As set forth above, Guardian undertook activities constituting major modifications at its Furnaces within the meaning of the PSD regulations. As a result, these activities triggered the requirements, *inter alia,* to obtain a PSD permit establishing emissions limitations that meet BACT and to operate in compliance with BACT. Guardian, as the owner and operator of the Furnaces referenced in Paragraph 2, failed to satisfy these requirements.

47.      Guardian failed to submit complete applications for Title V operating permits for one or more of its Furnaces that included enforceable BACT emission limits, identified all applicable requirements (including the requirement to meet BACT pursuant to PSD), accurately certified compliance with such requirements, and contained a compliance plan for all applicable requirements for which its Furnaces were not in compliance (including the requirement to meet BACT pursuant to PSD), in violation of Section 503(c) of the CAA, 42 U.S.C. § 7611b(c), 40 C.F.R. §§ 70.5(a) and (c), and the corollary provisions of the applicable state and local Title V programs.

48.      Since the time of its ownership, Guardian has operated one or more of its Furnaces and continues to operate one or more of its Furnaces without having a valid Title V operating permit that, *inter alia*, either requires compliance with BACT or contains a compliance plan for coming into compliance with BACT, in violation of Sections 502(a) and 504(a) of the

12

CAA, 42 U.S.C. §§ 7661a(a), 7661c(a), 40 C.F.R. §§ 70.6(a), (c), and the corollary provisions of the applicable state or local Title V programs.

49.     Unless restrained by this Court, these violations will continue.

50.     As provided in Section 113(b) of the CAA, 42 U.S.C. § 7413(b), the violations set forth above subject Guardian to injunctive relief and civil penalties. *See also* 40 C.F.R. § 19.4.

## PRAYER FOR RELIEF

WHEREFORE, the United States of America respectfully requests that this Court enter judgment against Guardian and in favor of the United States and provide the following relief:

a.      Permanently enjoin Guardian from operating its Furnaces, including the construction of future modifications, except in accordance with the Clean Air Act and applicable regulatory requirements.

b.      Order Guardian to remedy its past violations by, among other things, requiring Guardian to install and operate, as appropriate, the best available control technology, or such other emissions control technology required by law, on the Furnaces identified in Paragraph 41 for each pollutant subject to regulation under the Clean Air Act;

c.      Order Guardian to apply for permits for its Furnaces that are in conformity with the requirements of the Clean Air Act and SIP requirements;

d.      Pursuant to CAA Section 113(b), 42 U.S.C § 7413(b), issue a permanent or temporary injunction ordering Guardian to take appropriate measures to mitigate and remedy the effects of its violations by, among other things, requiring the Defendant to address or offset its unlawful emissions.

e.      Assess a civil penalty against Guardian of up to $25,000 per day for each violation occurring on or before January 30, 1997; up to $27,500 per day for each violation

13

occurring after January 31, 1997 through March 15, 2004; up to $32,500 per day for each

violation occurring on or after March 16, 2004 through January 12, 2009; and up to $37,500 for

each violation occurring after January 12, 2009;

      f.      Award Plaintiff its costs of this action; and

      g.      Grant such other relief as the Court deems just and proper.

Respectfully submitted,

FOR THE UNITED STATES OF AMERICA

JOHN C. CRUDEN
Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice

MELANIE SHEPHERDSON
By Special Appointment as a
Department of Justice Attorney
District of Columbia Bar No. 480058
U.S. Environmental Protection Agency
Region 9
Office of Regional Counsel
75 Hawthorne St.
San Francisco, CA 94105
Shepherdson.Melanie@epa.gov
(415) 972-3923

BARBARA L. McQUADE
United States Attorney
Eastern District of Michigan

14

ELLEN CHRISTENSEN
Assistant United States Attorney

ATTORNEYS FOR THE UNITED STATES OF
AMERICA